UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-173

**DUSTY MCBRIDE and**
**MCBRIDE CONSTRUCTION, LLC**                                       **PLAINTIFFS**

**V.**

**ACUITY, A MUTUAL INSURANCE**
**COMPANY**                                                       **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon Defendant Acuity's motion for summary judgment

(DN 14).  Plaintiffs Dusty McBride and McBride Construction, LLC have responded (DN 24).

Defendant Acuity has replied (DN 25).  Fully briefed, this matter is now ripe for adjudication.

For the following reasons, Defendant's motion for summary judgment (DN 14) is GRANTED.

## BACKGROUND

This is an insurance coverage dispute involving Dusty McBride and his residential

construction company McBride Construction, LLC (collectively McBride)  and Acuity.

McBride is insured under a commercial general liability policy (CGL policy) issued by Acuity.

In September 2005, McBride contracted with Gary and Holly Holder for the purchase and

sale of a house located in McCracken County, Kentucky.  The house was constructed by

McBride.  During the course of construction, McBride subcontracted with Jimmy Smith

Concrete to lay the footer and basement for the property.  After taking possession of the

property, the Holders experienced several issues related to the differential settlement of the

house.

As a result, the Holders filed suit against McBride and Jimmy Smith Concrete in McCracken Circuit Court.  In the Holders' state court complaint, they alleged that "the Property had been constructed in a deficient and substandard manner."  DN 14-2 at ¶12.   The Holders asserted that McBride breached the contract when they "sold the Property to plaintiffs with knowledge of numerous construction defects that did, in fact, materially impair the fitness of the property for use as a residence."  DN 14-2 at ¶18.  The Holders further asserted violations of the Kentucky Building Code, negligence, breach of the implied warranty of habitability, and fraud. DN 14-2.

At the time the complaint was filed, McBride was insured by Acuity under the CGL policy at issue in this case.  McBride demanded a defense under the CGL policy.  Acuity denied coverage for the Holders' claims and have declined to defend McBride in the state court action. McBride then filed this action for a declaration of rights against Acuity in McCracken Circuit Court.  Acuity invoked this Court's diversity jurisdiction and removed the case to this Court.

The CGL Policy contains the following provisions relevant to a determination of this matter:

1.  Business Liability

    a.  [Acuity] will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage or personal and advertising injury to which this insurance applies.  [Acuity] will have the right and duty to defend the insured against any suit seeking those damages.  However, [Acuity] will have no duty to defend the insured against any suit seeking damages for bodily injury, property damage or personal and advertising injury to which this insurance does not apply.
        . . .
    b.  This insurance applies:

        (1)  To bodily injury or property damage only if:

                (a)  The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and

> > (b) The bodily injury or property damage occurs during the
> > policy period.
> > . . .

The term "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In its motion for summary judgment, Acuity maintains that the faulty workmanship alleged in the Holders' complaint is not an "occurrence" and therefore is not covered under the CGL Policy. McBride contends that consequential property damage to other non-defective portions of the work resulting from the faulty workmanship of a subcontractor does constitute an occurrence.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly

supported motion for summary judgment.  A genuine dispute between the parties on an issue of

material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys.*

*Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky law is applicable to this case pursuant to *Erie Railroad v.*

*Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal

Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in

*Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)."  *Gafford v. Gen. Elec.*

*Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The only issue in this case is whether the Holders' claims are "occurrences" under the

CGL Policy, thereby triggering Acuity's duty to defend and to indemnify McBride.  Because this

issue requires the Court to interpret the relevant provisions of the CGL Policy in this case, the

Court begins its analysis by reviewing the rules used by Kentucky courts to interpret insurance

policies.

## I.    Rules of Interpretation

The Court has jurisdiction to hear this case because the parties are completely diverse.

*See* 28 U.S.C. § 1332.  When sitting in diversity, federal district courts are required to apply the

substantive law of the states in which they sit.  *See Erie Railroad v. Tompkins*, 304 U.S. 64

(1938).  The present case involves the interpretation of a contract of insurance, and the

interpretation of contracts is a matter of state law.  *See Transamerica Ins. Co. v. Duro Bag Mfg.*

*Co.*, 50 F.3d 370, 372 (6th Cir. 1995).  Accordingly, the Court will apply the rules used by

Kentucky courts to interpret and give meaning to insurance policies in Kentucky.

The first rule of interpretation is that "[a] policy of insurance is to be construed liberally

in favor of the insured . . . ."  *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*,

870 S.W.2d 223, 227 (Ky. 1994).  The second rule is that where the terms of the policy are not

ambiguous, their ordinary meaning will govern.  "[W]here not ambiguous, the ordinary meaning

of the words chosen by the insurer is to be followed."  *James Graham Brown Found. v. St. Paul

Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (citing *Washington Nat'l Ins. Co. v.

Burke*, 258 S.W.2d 709 (Ky. 1953)).  "[A]n insurance contract must be construed without

disregarding or inserting words or clauses and seeming contradictions should be harmonized if

reasonably possible."  *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82. S.W.3d 869,

875-76 (Ky. 2002) (quotation omitted).  "[I]n the absence of ambiguities . . . the terms of an

insurance policy will be enforced as drawn."  *Hendrix v. Fireman's Fund Ins. Co.*, 823 S.W.2d

937 (Ky. App. 1991) (citations omitted).  Unless the terms in the contract have acquired a

technical meaning, they "must be interpreted according to the usage of the average man . . . ."

*Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986).

    The third rule of interpretation is that the Court cannot apply the "ordinary meaning" of

the terms if they are ambiguous.  "An insurance policy is ambiguous only when the provision to

be construed is reasonably susceptible of more than one meaning."  *Foster v. Ky. Hous. Corp.*,

850 F.Supp. 558, 561 (E.D. Ky. 1994) (citation omitted).  If an ambiguous term or provision is

subject to two potential interpretations, "one favorable to the insured and the other favorable to

the insurer, then former will be adopted."  *Powell-Walton-Milward, Inc.*, 870 S.W.2d at 227

(citing *Koch v. Ocean Accident & Guar. Corp.*, 230 S.W.2d 893 (Ky. 1950)).  The prevailing

rule is that "uncertainties and ambiguities must be resolved in favor of the insured."  *Fryman*,

704 S.W.2d at 206 (citing *Donohue v. Washington Nat'l Ins. Co.*, 82 S.W.2d 780 (Ky. 1935)).

    If the Court finds that the provisions or terms in the policy at issue are ambiguous, the

Court will resolve the ambiguity by applying the "reasonable expectations doctrine." "Only

actual ambiguities, not fanciful ones, will trigger application of the doctrine." *True v. Raines*, 99

S.W.3d 439, 443 (Ky. 2003). "Under the 'doctrine of reasonable expectations,' an insured is

entitled to all the coverage he may reasonably expect to be provided according to the terms of the

policy." *Hendrix*, 823 S.W.2d at 938 (citing *Woodson v. Manhattan Life Ins. Co.*, 743 S.W.2d

835, 839 (Ky. 1987)). "The reasonable expectations doctrine is based on the premise that policy

language will be construed as laymen would understand it. . . . [T]he ambiguous terms should be

interpreted in favor of the insured's reasonable expectations." *True*, 99 S.W.3d at 443.

## II.   Duty to Defend

Under Kentucky law, an insurer's duty to defend its insured is broader than its duty to

indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.* 814 S.W.2d

273, 280 (Ky. 1991). "The insurer has a duty to defend if there is any allegation which

potentially, possibly or might come within the coverage of the policy." *Id.* at 279 (citing

*O'Bannon v. Aetna Cas. & Sur. Co.*, 678 S.W.2d 835, 838 (Ky. 1984). The determination of

whether the insurer has a duty to defend is made by comparing the allegations in the underlying

complaint with the terms of the insurance policy. *Id.* If the insurer makes a determination that

the claim is not covered under the policy, it may either defend the claim under a reservation of

rights or refuse to defend the claim. *Aetna Cas. & Sur. v. Commonwealth*, 179 S.W.3d 830, 841

(Ky. 2005). "However, should coverage be found, the insurer will be liable for all damages

naturally flowing from the failure to provide a defense." *Id.*

Here, Acuity refused to defend McBride in the underlying state court action. In support

of its decision not to defend McBride, Acuity argues that the Kentucky Supreme Court's

decision in *Cincinnati Insurance Co. v. Motorist Mutual Insurance Co.*, 306 S.W.3d 69 (Ky.

2010) mandates a conclusion that the Holders' claim of faulty workmanship does not constitute

an occurrence.  McBride contends that, despite the Court's holding in *Cincinnati Insurance*,

consequential property damage to other non-defective portions of the work resulting from the

faulty workmanship of a subcontractor does constitute an occurrence.  Therefore, McBride

concludes, coverage is owed for at least a portion of the claims asserted against it in the

underlying state court action.  For the reasons set forth below, McBride is not entitled to a

defense because the allegations in the Holders' complaint fall outside the scope of coverage

provided by the CGL policy.

## III.  Duty to Indemnify

McBride is entitled to indemnification if the CGL policy provides coverage for the

Holders' claims.  The CGL policy at issue provides coverage for property damage caused by an

"occurrence."  An "occurrence" is defined in the policy as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions."  In their state court

complaint, the Holders alleged that the house they purchased from McBride was constructed in a

deficient and substandard manner.  A structural engineer hired by the Holders concluded in his

report that the settlement was not indicative of "normal settlement" of houses in the Western

Kentucky area due to the presence of expansive soils, but instead was caused by the failure of the

foundation system to provide stable support for the house.  DN 24-1, Mundy Report.  As a

result, the Holders have experienced cracking in the exterior brick and mortar, the interior

drywall, and in the basement floor.  *Id.*  McBride contends that the alleged defects occurred due

to the faulty workmanship of its subcontractor, Jimmy Smith Concrete, who performed the site

excavation and footer/foundation work.

The Kentucky Supreme Court, in *Cincinnati Insurance*, addressed the issue of whether a

claim of defective construction against a homebuilder constitutes an occurrence under a CGL

policy.  306 S.W.3d at 71.  In *Cincinnati Insurance*, the homeowners brought an action against

the homebuilder alleging serious latent structural defects as a result of substandard work

performed by the builder or its subcontractors.  *Motorist Mut. Ins. Co. v. Cincinnati Ins. Co*.,

2008 WL 746689 at *1 (Ky. App. 2008)(not reported in S.W.3d).   Construction experts

determined that the subcontractors who performed the framing and foundation work had done

the work improperly.  *Id.*

The Kentucky Supreme Court ultimately found that the faulty workmanship claim was

not covered by the CGL policy because faulty workmanship does not constitute an occurrence.

*Cincinnati Ins*., 306 S.W.3d at 76.  In reaching this conclusion, the Court focused on the meaning

of the word "accident" as used in the policy's definition of "occurrence." [1]  *Id*. at 73-76.  As an

initial matter, the Court expressly stated that the terms "accident" and "occurrence" were not

ambiguous under the facts presented in *Cincinnati Insurance*.  *Id*. at 73-74.  Additionally,

because the term "accident" has "not acquired a technical meaning in the realm of insurance

law" it must be given its plain meaning.  *Id*. at 74.

"Inherent in the plain meaning of 'accident' is the doctrine of fortuity."  *Id*.  The Court

explained that the concept of fortuity consists of two aspects: intent and control.  *Id*.  A loss is

fortuitous if it is not intended.  *Id*.  However, that a loss is unintended is not sufficient to

conclude that an accident occurred because "the situation is rare indeed in which a contractor

intends that the work product suffer injury."  *Id*. (quoting *Kvaerner Metals Div. of Kvaerner*

*U.S., Inc. v. Commercial Union Ins. Co*., 908 A.2d 888, 899 n. 9 (2006)).  If that were the case,

"insurance policies would become performance bonds or guarantees because any claim of poor

workmanship would fall within the policy's definition of an accidental occurrence so long as

---

[1] The language of the CGL policy in *Cincinnati Insurance* was identical to the language of the policy at issue here.

there was not proof that the policyholder intentionally engaged in faulty workmanship." *Id*. at

75.

Also essential to a determination of what constitutes an accident is the issue of control

encompassed in the doctrine of fortuity. *Id*. at 76. A fortuitous event is one that is " 'beyond the

power of any human being to bring . . . to pass, [or is] . . . within the control of third persons . . .

.' " *Id*. (quoting 46 C.J.S. Insurance at § 1235). In *Cincinnati Insurance*, the Court found that

the homebuilder had control over the construction of the house, either directly or indirectly

through the subcontractors that it chose. *Id*. For these reasons, the Court held that "a claim for

faulty workmanship, in and of itself, is not an 'occurrence' under a commercial general liability

policy because a failure of workmanship does not involve the fortuity required to constitute an

accident." *Id*. at 79-80. This conclusion "'ensures that ultimate liability falls to the one who

performed the negligent work . . . instead of the insurance carrier. It will also encourage

contractors to choose their subcontractors more carefully instead of having to seek

indemnification from the subcontractors after their work fails to meet the requirements of the

contract.'" *Id*. at 75 (quoting *L-J, Inc. v. Bituminous Fire and Marine Ins. Co*., 621 S.E.2d 33,

37 (2005)).

The Kentucky Supreme Court's decision in *Cincinnati Insurance* controls the disposition

of this case. Because faulty workmanship on its own is not an "occurrence" under a CGL policy,

the policy does not afford coverage to McBride for the claims of the Holders. Additionally, the

fact that the work on the foundation was performed by a subcontractor of McBride does not

change this conclusion. In *Cincinnati Insurance*, the subcontractor's faulty workmanship on the

foundation of the house caused "cracks in the drywall and exterior brick walls, defective

windows and doors, sagging floors, separation of brick veneer from exterior walls, and leaning

walls." 2008 WL 746689 at *1.  Likewise, this case presents very similar facts, as the alleged

faulty workmanship performed by a subcontractor on the foundation work has allegedly caused

cracking to the exterior brick and mortar, the interior dry wall, and the basement floor.

Accordingly, applying the law of Kentucky as set forth in *Cincinnati Insurance*, the faulty

workmanship alleged in the Holder's state court complaint is not an "occurrence" under the CGL

policy.

McBride does not dispute the holding in *Cincinnati Insurance*, but contends that the

corollary to the Court's holding is that an occurrence *is* present when consequential property

damage to other non-defective portions of the work results from the faulty workmanship of a

subcontractor.  McBride therefore urges that, because of this "subcontractor exception," an

analysis of the Holders' claims is two-fold: (1) the claim for the cost to repair the alleged

defective workmanship of the subcontractor, and (2) the resulting property damage caused by the

subcontractor's defective work.  In support of this contention, McBride discusses the evolution

of standard CGL policies and cites to courts of other states which have upheld McBride's

position.[2]  Additionally, McBride asserts that a footnote included by the Court in *Cincinnati*

*Insurance* acknowledges the subcontractor exception.  That footnote, in its entirety, reads:

---

[2] Courts of other states have found a "subcontractor exception" despite the majority rule that faulty workmanship is not an "occurrence" under the standard CGL policy.  These courts conclude that CGL policies do provide coverage for property damage to the contractor's non-defective work caused by a subcontractor's faulty work.  *E.g.*, *French v. Assurance Co. of America*, 448 F.3d 693 (4th Cir. 2006)(applying Maryland law); *Greystone Construction, Inc. v. National Fire & Marine Ins. Co.*, ---F.3d---, 2011 WL 5148688 (10th Cir. 2011)(applying Colorado law); *Crossman Communities of North Carolina, Inc. v. Beazer Homes Investment Corp.*, 2011 S.C. Lexis 277 (August 22, 2011); *Lee Builders, Inc. v. Farm Bureau Mutual Insurance Co.*, 104 P.3d 997 (Kansas 2005); *American Family Mutual Insurance Co. v. American Girl, Inc.*, 673 N.W.2d 65 (Wisc. 2004).  The South Carolina Supreme Court came to this conclusion by determining that the expansion of the definition of "occurrence" to include "continuous or repeated exposure to the substantially the same general harmful conditions" created an ambiguity which must be construed against the insurer.  *Crossman Communities*, 2011 S.C. Lexis at *10.  Other courts have found a subcontractor exception  by determining that the "Your Work" exclusion would be meaningless if damage to a contractor's non-defective work product were not covered in the first place.  *French*, 448 F.3d at 705-06; *Lee Builders*, 104 P.3d at 1005; *Greystone Construction*, 2011 WL 5148688 at *13.  The "Your Work" exclusion in CGL policies exclude coverage for property damage to "your work" or to "work performed by you."  However, the exclusion generally does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

9A Couch on Insurance Third Edition § 129:4 (2009).

It appears as if a general rule exists whereby a CGL policy would apply if the faulty workmanship caused bodily injury or property damage **to something other than the insured's allegedly faulty work product**. *Id.* ("In other words, although a commercial general liability policy does not provide coverage for faulty workmanship that damages only the resulting work product, the policy does provide coverage if the faulty workmanship causes bodily injury or property damage to something other than the insured's work product."). Thus, as we construe it, **application of the general rule could lead to coverage if**, for example, **the Mintmans' allegedly improperly constructed home damaged another's property**. However, we need not definitively decide in this case whether we should adopt this general rule, as the facts do not present a claim that would fall within it.

*Cincinnati Ins.*, 306 S.W.3d at 80 n. 45 (emphasis added).

Although McBride acknowledges that the Kentucky Supreme Court did not address the subcontractor exception in *Cincinnati Insurance*, he nonetheless urges this Court to adopt such a rule.  However, Kentucky courts have not adopted such a rule and this Court declines McBride's invitation to do so here.  Furthermore, the Kentucky Supreme Court, in the *Cincinnati Insurance* footnote cited by McBride, does not acknowledge the exception advocated by McBride.  Instead, the Court acknowledged that CGL policies may provide coverage for property damage *to something other than the insured's work product* caused by a subcontractor's faulty workmanship, such as damage to another's property.  Here, as in *Cincinnati Insurance*, the facts do not present a claim that would fall within such a rule because the alleged damage caused by the subcontractor was to McBride's work product and not to another's property.

## CONCLUSION

For the foregoing reasons, the faulty workmanship alleged by the Holders is not an occurrence under the CGL policy issued by Acuity.  Therefore, the CGL policy provides no coverage for the Holders' claims and Acuity has no duty to defend.  Accordingly, Defendant Acuity's motion for summary judgment is GRANTED.